We'll hear from counsel. Mr. Frank, good morning, sir. You may proceed. Good morning. May it please the court, Theodore H. Frank, pro bono counsel for the class representative, David Oetting. In Merrick v. Lane, Chief Justice Roberts expressed fundamental concerns with the cypre doctrine. And this case presents many of those concerns. To begin with, the court chose to distribute $2.7 million of the class's money, even though it was reasonable and feasible to distribute that money to the class. And we know this because the court had already made a $1.75 million distribution to the other subclass that's at the joint appendix 20 to 21 and 120 to 121, which shows that that distribution was successful. And there is a motion pending right now to distribute an even smaller amount, $1 million to that subclass. And that's at the appendix at 126 and 127. Second of all, there's a subclass of shareholders who originally owned Nation's Bank stock and then a subclass of shareholders who owned Bank of America stock. And that's the ones you just referred to. The Bank of America subclass is the one that got the smaller distribution. And what's left in that? What residual is left in that fund? $1 million. And there's a motion pending to distribute that to the class. The second problem with this SIPRI distribution is that this was a nationwide class of shareholders. And it's going to a Missouri charity. And this court held in Airline Ticket Commission that that sort of geographic mismatch was inappropriate. And several other courts have since then agreed with Airline Ticket Commission, including Nation versus AOL, 663 F1034. And that sort of geographic mismatch has been criticized in a number of law review articles. Third of all, you have the mismatch of the next best distribution. The whole point of SIPRI is that it's French for next best. The next best option, if it's infeasible to distribute to the class, what do you give it to? And again, in Airline Ticket Commission, this time the second of those two decisions, this court held that a legal aid charity was not the appropriate next best distribution for a class of airline travel agents. And here, we have a class of shareholders. And legal aid is not the appropriate next best distribution when there are any number of nonprofits that deal with the problem of securities fraud, when there is the SEC fair funds set up by the federal government that explicitly distributes money to victims of shareholder fraud. How much discussion on these points was made before Judge Jackson? The SEC fair funds was not raised before Judge Jackson, but Mr. Edding did propose several alternative charities to LSEM, including the Stanford Securities Action Clearing House. In addition, Mr. Edding did cite to Airline Ticket Commission under Yee versus Escondido the fact that he raised the best available precedent to the district court. And the fact that the district court has an independent fiduciary obligation to the unnamed members of the class means that these arguments are preserved. There's been a lot of collateral issues thrown at this court. I'd like to focus my argument on what questions you might have and clarify the record in any way you might need. Same district judge is doing both class funds, right? That's correct. And they're distinct. I don't understand why the court is willing to do even smaller supplemental distributions to the class members in the Bank of America class and not the nation's bank class. I didn't see that distinguished in the opinion on the addendum. We're mystified, too, Your Honor. And that's one of the reasons. There was no reason. What reason was given by the class counsel? Why it was feasible for the Bank of America and not for nation's bank? You would have to ask class counsel that. No, I mean, were you there? Were you at the? I was not at the district court. You've read the transcript. I assume they're all reported. They're reported, but they did not give a specific reason why it's OK to distribute to one subclass and not the other. What they said with respect to the first class was, well, these are wealthy shareholders. These are mutual funds. As to which class now? You said the first class. I don't know which that is. You're right. I apologize. The nation's bank class. With respect to the nation's bank class, they said many of the shareholders are mutual funds. And there's been churning. I have to believe that would be true with Bank of America. I think that's correct. I don't think there's any. But there's nothing in the record distinguishing the characteristics of the two classes? The only distinction in the record is that they had different lead subclass counsel. And the different lead subclass counsel had different conceptions of their fiduciary responsibility to the class. So the attorneys for the Bank of America class supported the supplemental distribution? They made a motion for a supplemental distribution that's still pending. That's at 126. They did not make an appearance in this proceeding? They're not involved in the nation's bank subclass. All right. There are many, many other problems that happened here. There was no notice to the class of who the proposed CyPray recipients would be. There was a second distribution of attorneys fees, even though there was already a final order on attorneys fees. And again, no notice to the class that there would be a second request for attorneys fees. Well, counsel had notice, correct? I'm sorry? Counsel had notice. Counsel had notice. That's correct. Counsel could have let the members of the class know. The class representatives counsel, I mean, could have banged on a drum or something. But again, 23H1 requires class counsel to make that notice. And the district court made a series of specific findings premised on the idea that the CyPray was appropriate. And we would hope that if this court overturns the CyPray, that it also overturns those findings. What has it got exactly? What relief do you specifically seek? We seek a reversal of this order. And what directions do we give to the district court? To distribute the money to the class in the absence of a finding that it's not feasible to do so. And again, the- Let's see. I'm trying to remember what the district court said about the lack of feasibility. She said it would be difficult and costly, which one, is not infeasible. And two, I don't think is accurate. Because again, at 120 to 121, we see that it was feasible and not particularly difficult, not particularly costly, to distribute $1.75 million to the other subclass. And with respect to this subclass, we know who the class members are. This is not a case like Powell or Hughes v. Core, where it's a mystery who the class members are. These are all identifiable class members, many of which are sophisticated financial institutions whose addresses haven't changed. Or if they have, it's easy to determine who they are. It's very much feasible to distribute $2.7 million to 160,000, or even just the subclass of 90,000 claiming shareholders. If there aren't specific questions, I'd just like to say I think this is a very straightforward application of existing Eighth Circuit law. I think the court should go further and follow what the Fifth and Seventh Circuits have said about the class being the primary beneficiaries of any settlement, and that the SIPRE is a last resort only after it's infeasible to make further distributions to the class. And the American Law Institute's Principles of the Law of Aggregate Litigation, Section 3.07, sets forth very clear-cut guidelines that can be a model for any opinion. Even all of that, I understand those arguments. Is there any specific, in addition to those overreaching arguments, is there any specific objection to the envy that she gave the money to? I'm sorry, I didn't hear that. Sorry. In addition to the overarching comments that you've made, does Mr. Eiding have any objection to the particular entity to which she gave the funds? Yes, Your Honor. As we indicated, it's a- Well, I understand the general objections, but I wonder if there are any specifics about that particular agency. It's a worthy, charitable organization. We're not asking for its 501c3 status to be revoked. If Green Jacobson wants to take its tens of millions of dollars of attorney's fees and donate a portion of that to LSEAM, they're perfectly willing to do it. We don't have any objection to them doing that. If the Supreme Court of Missouri wants to establish a $30 fee for lawyers to give to LSEAM, as they have, to the extent that's within their constitutional authority. Is it fair to say the objection is they're not next best? They're not. That's the only specific objection. Two specific objections. One is that they're not next best, and two, it's the class's money, and it should go to the class. I understand, but that's, in response to Judge Murphy, the only specific objection is not next best. It's not next best. Now, a question that occurs to me. If on this record, the fee award would be appropriate if we affirmed, but we reverse the CPRA ruling, does that have any impact on the fee issue? My understanding is that Mr. Edding would make some motion for some discouragement. I don't care what he would want. What are you, you're arguing for him. Why would that impact the fee award? That specifically would not impact the fee award. The fee award argument is a separate. So in your view, you're conceding that the fact that they urged what, if we were to find it was an inappropriate distribution, that does not affect their entitlement to fees as class counsel? I think it's a separate, different argument that I don't want to step on my client's collateral malpractice litigation. I think he's arguing that that's a breach of fiduciary duty. This court doesn't need to reach that. I'll reserve the rest of my time for rebuttal. I have two very qualified counsel arguing against me. Thank you. I'm very well. Mr. Jacobson, good morning. Good morning, Your Honor. I'd like to first address some of the court's questions that were addressed to Mr. Frank and correct some errors in the record that I think may be a little, it's unfortunate because he wasn't involved in the case below. You asked Judge Loken about the other class, the Bank of America classes. There's actually two classes each for Nations Bank and Bank of America, four classes each, purchasers, holders. That's not important. The Bank of America class, the initial distribution was of their full 156 million. Some money didn't go. They did a second distribution of 10 million. The 1.7 he talks about was not a third distribution to the class as a whole. Rather, it was discovered after, it was discovered that the Bank of America. So what was the 10 million then? The 10 million was the second distribution. When there was a first distribution done, there was money left over in the account because of people not cashing checks, because of interest earned and so on. So a second distribution was made. It was then discovered that the Bank of America Trust Department, which was an entity within Bank of America which held Bank of America stock for the benefit of some third parties, had never notified its beneficiaries, never filed claims on their behalf. And those individuals would have been entitled to $1.7 million in the first distribution. And so because there was still money available to do that with, the distribution of 1.7 was made to this handful of identified people. It wasn't a distribution made to everybody in the Bank of America class. It was feasible to give money to these 40 or 50 people whose stock had been held by the Bank of America trust company, trust department. So it was not a- And what is the final one million motion in purpose? That is outside the record, Your Honor, but essentially they- It wouldn't be in the- No, the justification is outside the record. I mean, the reason why they filed the motion is not in the record. Aren't the motion documents are in the- Yes, and all the motion says is just distributed. It doesn't give any further detail. I know why, but it's not in the record. But does the motion say, does it go to the distributees only of the third or does it go to every- It was proposed to go to the people who received money in the second distribution- The second? Yes, who would receive at least, I believe, $100 each. I believe that's what it provides. So that's quite comparable to this distribution. Well, I mean, one, you can, in these terms, one and 2.7 million are not that different. Yes, there are different classes. So your distinction is to the third doesn't apply to the fourth. Correct, but there has been no order on the fourth. There's been no motion other than just do it. There's been no showing that it's feasible or not feasible. It's just an attempt to get out of the case and get done with it. That's what it's about. Why didn't you bring that motion here? Because we wanted to get, we examined it very closely. We concluded and the judge agreed that any distribution we would make to people who were title owners of the shares at that time with the amount that was left and setting a minimum amount at different levels. And if you look at our brief- I don't understand that answer. Yeah, I'm sorry. If you look at our brief at pages 50 and 51 particularly, where we lay out the facts, the money would go primarily to name, what's called street name owners who don't actually have the beneficial interest in it. How do you know that? From having worked on the case for a dozen years and the judge did too. I mean, that we have the list. In terms of who will respond, you mean? Excuse me, Your Honor? In terms of who will respond? No, in terms of who's entitled to the largest shareholders. If you do a cutoff at let's say $50 a share of individual or a hundred or a thousand, we look at different cutoffs, who would be the list of shareholders who would get that benefit? It's almost entirely entities that are holding beneficially for others and their interests are constantly being traded and churned so you could give it to somebody but it's- So for the good of the nation, you decided that a charity was better than these large shareholders? Rather, Your Honor, here's an analogy. Let's say you have a radiation accident. Why isn't that a fair take on what's at issue? Well, the people who would get the ultimate benefit of it now, if we were to do it now, would only by random chance be the same people who supposedly lost the money 12, 14 years ago because the people who, the funds that hold it are groups of funds. What's the relevance of that? That's true of every settlement fund in a security fraud case. If the enterprise is ongoing and the stock is publicly traded, there's a constant churning of shareholders so that whenever the fund is formed, the current shareholders will not be who were the victims. Your Honor, over time- Is that right? That is right, but over time, it becomes a more and more acute thing. So what? Well, you're trying to do- The remoteness you're talking about is irrelevant. To the settlement of these securities fraud cases, isn't it? No, Your Honor, I don't think so, but may I address a couple of- I assume you do this for a living, and I- Not generally, no. This is not my practice, my area of practice, but how do you, who are the, do you have, when you distribute one of these funds that's collected seven years after the tort? It goes to the shareholders. Your Honor- The shareholders at the time, or the current shareholders? Yeah, at the time. At the time, typically, you get the names of the shareholders at the time, it's a pretty arduous- So we have it, so that's in this record? Your Honor, yes, it's a pretty arduous task, and the amount of money here- Wait, wait, wait, these people are, so that's in the record, because you've already made- We made a distribution. There were 160,000 class members. You didn't burn those names, did you? Your Honor, I don't know where the names are at this point. Why? I can't tell you right now where their names are, I don't know. I believe the claims administrator has them. There were 160,000 class members. 98,000 approximately filed claims. A number of those didn't cash their- Well, so then the class shouldn't have been certified. I mean, that's irrelevant, if it was unmanageable. Your Honor, I'd like to address another, I want to get back to this, but I want to address a couple other points first, if I could. I mean, this is the guts of it. You think that a charity is more worthy and less work than these 160,000 victims of, or beneficiaries of the fund you gathered for them. Your cases all say that practicality is an issue, and to try to track down and figure out where the people who get the beneficial interest, who actually were hurt back then, to try to unravel all these funds of funds- What circuit court says that's a factor? That the- The administrative costs- The identifiable victims of the initial distribution. If the administrative costs of trying to locate people again, and to figure out who's actually the beneficiary- Give me your best circuit court case for that. I think Airline Tickets says that, in fact, at one point. But, Your Honor, this is the wrong person to even bring the case. He doesn't have standing to bring this case. Did you raise standing in the district court? Yes. Of Mr. Edding? Yes. Well, the other chap was discussed, and standing was found not there. But it is fundamental to class litigation that the class representative, when class counsel makes a motion to terminate the case and get a final fee award, the representative class plaintiff, on behalf of the class, can oppose that, right? Yes. Okay. So there was no standing problem. But he had a standing problem, because the relief he wants is another distribution. He is not eligible for another distribution. He didn't cash his checks. He didn't cash his checks for a reason wholly unrelated. He didn't get- He is still a representative. Counsel, he's still a representative of the class. This is just, I mean, I did some of these things. I was part of challenging class counsel, and the class representative can do that. And it doesn't matter whether he or she, or if it's an institutional representative, whether they will personally benefit. They're representing the class and challenging class counsel's actions on behalf of the class, and they're standing. All right. I mean, I- I understand your point, Your Honor. I'd like, there's so many different reasons why this appeal should- But there's so many other reasons why this should be affirmed. I'd like to address a couple of those before- My time is all gone. Mr. Jacobson. Yes, Your Honor. The settlement agreement here provides that after a first distribution, money will be given to a proper non-denominational charity. That's in the settlement agreement. That was in the notice to the class. No one objected to that at the time. No one, Mr. Edding didn't object to that. The clear case, K-L-I-E-R case, says that the district court is obliged to follow settlement agreement. While we all use the phrase Cypree here for convenience, because we typically talk about Cypree, Cypree is about doing the next best. And here, you're not doing the next best. You're doing what the settlement agreement specifically provided. And Clear v. Actuan says that terms of settlement agreement are always to be given controlling effect. The settlement agreement here said, after one distribution, the district court may give to a charity in its discretion. That was in the contract. That's the settlement agreement. It's binding here. The Powell. Could it be void? Is it violating public policy? I think someone would have had to object to it. It came up to the Eighth Circuit. You all affirmed the approval of the settlement agreement. There were three subsequent orders which provided for that, none of which have been appealed. We didn't approve the phrase that says the court's sole discretion, which was flat contrary to airline tickets. It wasn't challenged, I'm sure. It wasn't challenged. Right, well, it's not challenged now, but it was wrong, and it can't be, I mean, that provision was simply unenforceable and can't bar a timely challenge now, in my view. Well, there's still no challenge to the 2004-2005 orders, which said that as well. No, but you're saying that they constitute a waiver or law of the case. I don't know which. Yeah, waiver and law of the case. Powell's. They're not waiver because it wasn't right. Powell says, Your Honor. And they're not law of the case because it was not challenged on appeal, and it was wrong, it was unlawful. Your Honor, the Powell case, your case, the Powell, says that once the class member's been fully compensated, that's one of the tests as to whether or not money can go to Cypreight. Their whole thing is there was a $5, $87 stock drop when this news came out. This news was one of six items. It was by far from being the largest one, and within a week of the drop, the stock recovered under the PSLRA. It stayed above the pre-drop, pre-disclosure amount for the entire 90-day period. There were, under the PSLRA, there were no damages here. We were able to, I understand that argument, but you know what my instinct tells me is that when there is a settlement of one of these class actions in the securities field or the antitrust field or comparable, the fully compensated, the class members are now entitled to the settlement fund. Yes. They're not fully compensated if any part of the fund, if they have not received the full fund. It doesn't matter whether the settlement fund was one-third, two-thirds, or five times their actual losses. Their entitlement is to the settlement. And, Your Honor, I think the record will show that in addition to the $333 million that we obtained from Bank of America, we obtained for the class an additional $2.3 million from Edward Jones, which was added to that amount for which we took no fee, which was distributed to the class because of Edward Jones' neglect in failing to inform its class, its shareholders, people who he was holding in street name. So we increased the amount of the fund by that amount. In addition, we recovered $350,000 in the Lagerfeld case, which was then added to the total amount. So if you take the $2.3 from Edward Jones and you take the $350,000 we got in Lagerfeld, that's your $2.7 million. But did those monies go into the settlement? Yeah, and they were distributed to the class members. Well, yeah, but they're just part of what I'm saying is fully compensated. No, those were outside the settlement agreement. Edward Jones neglected to tell, my time is almost up, Edward Jones neglected to tell their customers, we've got additional money, this is not unusual in this kind of litigation. But that money went into the fund that's distributed for the settlement agreement and approval, right? It did not pass through the fund. It went directly to, we got an order requiring Edward Jones to pay its customers directly. The money they would have gotten had Edward Jones had given them notice. And so the checks went right off from Edward Jones to their shareholders who could have participated in the fund and that caused everybody to get a little bit more money than they would have otherwise. So... No one objected to the site pre-provision. Whether or not a third distribution is practical or impractical is a fact question, clearly erroneous standard here. There's plenty of evidence in the record, pages 46 through 52 of our brief describes that evidence in the record to allow the judge to find it would be impractical to make a third distribution. Amicus is gonna say why legal services is an appropriate substitute here. I would note also that legal services, in his objection to the site pre, we named three potential recipients. He objected to them, Backstoppers and Matthew Dickey, never objected to legal services. Is there anything in the record about whether legal services has participated in a federal securities fraud case? There is nothing in the record to that. We do know, however, that legal services is not permitted to participate in class actions because of the federal statute for prohibition of participating in class actions. But to the extent that legal services was named, Your Honor, you asked us earlier, it would be either waived or invited error because we named three potentials, he objected to two of them, and the court found, no, did not give them to, he objected, gave to the one he didn't object to, which would suggest that he was in favor of legal services getting it. My time's up, I'll give it to the Amicus who's come a long way to address the court from an impartial, not part of this case view. Thank you, Your Honor. I request that you affirm the judgment in all respects. Very well. Mr. Kennedy, good morning. You may proceed. May I please the court, Timothy Kennedy on behalf of AMICI, the National Legal Aid and Defender Association and the Association of Pro Bono Counsel. It's not often amicure permitted to participate in oral argument. We appreciate the opportunity to speak to a critical issue to AMICI and to legal aid associations across the country. We urge this court to articulate a clear standard which explicitly recognizes the appropriateness of a SIPRI distribution to a legal services organization. This court should not endorse a narrow view which unnecessarily limits the discretion of district courts to make such an award under the appropriate circumstances. Legal service organizations are appropriate recipients of SIPRI in many cases because at a baseline, they share a common interest with individual members of class actions, which is people in need of assistance gaining access to the court system. As such a distribution of class action residue to a legal service organization will reasonably approximate the interest of most classes. Individual members of any class action need to aggregate their claims in order to pursue them because individual prosecution is not feasible. Many, if this were not so, the case would not have been certified. And likewise, legal organizations serve to provide access to justice to individuals who lack resources to seek redress. Do you have a position as to what showing should be required or would be appropriate to demonstrate that a legal services organization is next best? Sure, I think the standard for a legal service organization is absent a readily identifiable proxy which is available as a clear next best. A legal service organization is at a baseline appropriate entity to receive SIPRI. In this case, this court's opinions and in right airline ticket case in Powell, there was a readily identifiable next best class of persons. In the airline ticket cases, it was travel agents from Puerto Rico and the US Virgin Islands who were not members of the class, but who were subject to the same anti-competitive caps. In Powell, the district court set up a organization in the same county, in the same location where the plaintiffs were located that endowed a scholarship for African-American college students. And in those cases, those were readily identifiable proxies. We don't have that here. I don't think it's suggested that there is a readily identifiable next class of persons or an organization which- Why not the SEC Fair Fund? The SEC Fair Fund is an option, but it's not the clearly next best one. If you look at what every member of this class action shares is they are interested in access to the justice system. And while the SEC Fair Fund, a law school foundation on securities issues, has certain elements that align with a securities class action, it's not clear that they actually approximate the interest of the individual class members in this case, many of whom may no longer own stock. It's not a clear cut next best. And the court has discretion and should have discretion to make that determination under the facts of every case. The common interest in access to the court system is not theoretical, nor is it remote. It's substantial. And the strength of the public policy behind this is manifest by the statutes and court rules of many states, including South Dakota, which require percentage distribution of class action residue to legal service organizations. Many federal courts have likewise viewed legal service organizations as a useful next best side recipient in the absence of a readily identifiable proxy. We do not suggest that legal service organizations are the only next best, or that every class action residue need go to a legal service organization. We do, however, encourage the court to recognize that in the absence of a readily identifiable proxy, legal services organizations should be considered. A mechanical rule which requires an exact substantive match unnecessarily restricts the discretion of the district court to make an appropriate and useful distribution. There are cases in the Ninth Circuit where parties have actually formed a foundation to receive the side pre-distribution, which is suspect, and it was noted as such by Justice Roberts in his comment in the recent denial certiorari in the Facebook case. By recognizing the common interest shared by legal service organizations and class action members, you will not only ease the burden on district courts, but you will further the substantial interest in promoting access to the justice system. Thank you. Very well. Mr. Frank? Thank you, Your Honors. The amicus position contradicts what the Seventh Circuit said in Terza, and it contradicts their own law review article, which criticizes the sort of geographic mismatch we have here. We heard that the settlement provided for CyPRI, as Judge Logan indicated, it wasn't right to raise it then, and Baby Products 708F3160 is directly on point on this. It's too early to challenge the CyPRI when we don't know what the judge is gonna do. Maybe the judge would have done something appropriate, and there was nothing to appeal. There was no reason to raise it at that time. In addition, what happened here is not consistent with what the settlement said. The settlement said if there's money left over after the distribution, then there's the potential, it may go to charity. The may, I think, is by itself a constraint on what the judge can do, because the judge still has to follow the law, has to follow CLEAR, has to follow Terza, has to follow In re Airline Ticket Commission. But more importantly, the only reason that there is so much money left over is because in the judge's order, at the time, Judge Mangle, he withheld $2 million for future distribution. Was he asked to? I apologize that I don't know whether he was asked to. I think there would be a very good reason to withhold it, because they knew more money would be coming in from restitution. It would be a problem to distribute $200,000, $300,000. If you withhold $2 million, then when that $200,000, $300,000 comes in, you can distribute the 2.2, 2.3, and now it's up to 2.7 million. Again, there is no reason to appeal that order at that time, because again, it's not right. The judge might do the right thing and eventually distribute it to the class. And to the extent they claim we didn't appeal that, we did appeal it. It's in the Notice of Appeal. We've appealed a final decision, and all orders and opinions that merge within that final decision. We're hearing that the class was fully compensated because there was an extra 2.3 million put into the settlement fund. I think Judge Logan has that right. That's still part of the settlement fund. There's still the abstract claim of damages out there, and the fact that counsel is now saying that they violated Rule 11 and brought a securities lawsuit when there wasn't any damages, I don't think should permit them to redistribute what was meant for the class to be compensated. And that's in the settlement fund. But even the premise is incorrect, because there's $5.8 million that was removed from the settlement fund by the embezzlement by the settlement administrator, because class counsel picked a settlement administrator that didn't have adequate internal controls, and as we learned from last week's 20HA, was underinsured. So even if the $2.3 million counts and is somehow a windfall, there's a negative windfall from the $5.8 million. The class is still entitled to their $2.7 million. We hear that it's a problem because you couldn't distribute to the class members with beneficial interest. And that's just simply not the law. I own Vanguard Mutual Fund, the 500, S&P 500 Index. So by their argument, I have a claim in any one of those 500 possible securities litigations, and that's not true. It's Vanguard that has the claim, and maybe I'll be the beneficiary because I still own my, I'm a buy-and-hold mutual fund, and maybe it'll be some other set of investors. But the injured party is Vanguard, and they may be large and they may have churn in who their ultimate beneficial owners are, but they are the party in interest. They are the class member. They are the ones entitled to recovery. And to the extent you wanna say that the beneficial interest changes and therefore they shouldn't be compensated, that's a condemnation of the entire PSLRA litigation structure. That's the way our system works. The parties in interest have the damages claim. There's no indirect claim. There's no obligation to go and find out who owns Fidelity Contra Fund in 1999 and track down their two cents each for their Bank of America shares. No, what happens is is that Fidelity Contra Fund would get 27,000 of the 2.7 million or whatever their proportionate share is. With respect to the manageability of the distribution, this is a discretionary decision the district court has to make. I think that's pretty clear. What in your view should be the relationship and the analysis between the absence of a clear next best as we had in airline tickets and the manageability of making a final distribution for the class? I think they're two separate inquiries. Why aren't they? It seems to me they should be interrelated. Well, I don't think it's a sliding scale. I think first you have the threshold determination. Is it possible to distribute to the class? That's what Terza says. If it's possible to distribute to the class, defined as will it cost more to give the money to the class than what the class will receive? Will the administration swallow up the proceeds? That's the standard under Terza. Once that determination's made that the class- Part of the problem, how many times are you gonna have to do this to get all the money out the door? Well, you distribute the 2.7 million and historically what we've seen is that 95, 98% of the checks get cashed and we'll have 50,000 left over. And at that point, yeah, you give $50,000 to the SEC Fair Funds, which I think is very clearly the next best because that's an organization established to give money to victims of securities fraud. I don't think in the history of Cypre there's ever been a clear next best. So I think that answers that question. I think it's two separate inquiries. You have the threshold inquiry under 3.07, under Clear, under Terza, do you give the money to the class? And if the answer is no, it's not feasible to give the money to the class, then you look for the next best. If there's not a clear next best, then I think the right answer is that it is achieved to the state, but there's precedent saying, yeah, once you pass those two threshold inquiries, go ahead and give it to Legal Aid or the Federal Judicial Center or some charity of that nature. But again, you still need the geographic nexus, which we don't have here. Who presented the views that you are expressing here today before the district court? Mr. Edding argued for application of Airline Ticket Commission and argued for distribution to the class. And that's in the record in the 60s. Did he do it individually or through counsel? I'm sorry? Did he do it individually or through counsel? Through counsel, through his district court counsel, Mr. Tomlinson. I'm out of time, but I'm happy to answer any other questions you might have. What import should we give to the fact that, as Amicus pointed out, a number of states either by rule or statute have been, like South Dakota, frankly, I wasn't aware that South Dakota had done that. I think it's by South Supreme Court rule that 50% of the residual funds go into the equal access to our courts. And I think that cuts in our favor because there's no comparable federal statute here. Congress has not spoken on that. The other states recognize that you need some statutory authority before you can distribute the class's money. But in addition- Are the states, in effect, acting as the laboratories that we should follow? Well, I think they're making a legislative determination and Congress has not made that legislative determination. And, you know, the amici are perfectly capable of lobbying Congress to get a similar statute, and then I think it would run into problems under Brown versus Washington legal foundation, but we don't have to reach that issue. What we have here is the precedent of airline ticket commission. We have TIRSA, we have CLEAR, we have Noxian, we have section 3.07 of the principles of the law of aggregate litigation. Well, thank you for the arguments. Thank you. The case is submitted and we will take it under consideration.